1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13
14

| | |
|---|---|
| JET PARTS ENGINEERING, INC., | ) CASE NO. C15-0530RSM |
| | ) |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART DEFENDANTS' |
| | ) MOTION TO DISMISS |
| QUEST AVIATION SUPPLY, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## I.     INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(6).  Dkt. #15.  Specifically, Defendants seek to dismiss the first cause of action with respect to the individual Defendants and the third, fourth and fifth causes of action with respect to all Defendants, on the grounds that each of those claims fails to state a viable cause of action.  Plaintiff argues that it has pled sufficient facts to meet the applicable pleading standards.  Dkt. #16.  For the reasons set forth below, this Court agrees in part with Plaintiff and GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

## II.     BACKGROUND

This matter arises out of distribution agreements between the parties.  Plaintiff Jet Parts Engineering, Inc. ("JPE") is a Washington corporation.  Dkt. #1 at ¶ 1.1.  JPE is engaged in the

ORDER
PAGE - 1

business of designing, manufacturing, distributing, and selling replacement jet parts. *Id.* Defendant Quest Aviation Supply, Inc. ("Quest") is a California corporation engaged in the business of designing, manufacturing and selling replacement airplane parts. Dkt. #1 at ¶ 1.2. Defendant Brent K. de Ruyter was the CEO and primary, if not exclusive, owner of Quest. Dkt. #1 at ¶ 1.3. Defendant and his wife are residents of California. *Id.* at ¶ ¶ 1.3 and 1.4.

According to the Complaint, JPE and Quest entered into two distribution agreements for airline parts: the Distribution Agreement dated October 18, 2013 (the "Air France Agreement") and the Distribution Agreement dated January 14, 2014 (the "Delta Agreement"). *Id.* at ¶ 3.1. Under these Distribution Agreements, Quest agreed to act as supplier and JPE agreed to act as distributor of airplane parts. *Id.* at ¶ 3.2. After entering into the agreements, JPE successfully placed Quest parts with Air France, which Quest had been unable to do working independently.

JPE alleges that, at some point, Quest provided inadequate parts, which Delta Airlines rejected. *Id.* at ¶ 3.4. Plaintiff does not allege the specific date or timeframe of this occurrence. Apparently, Delta Airlines gave JPE and Quest the opportunity to correct any deficiencies in the parts, but Quest provided no support to JPE to address Delta's objections. *Id.* at ¶ 3.5 JPE believes that Quest's failure stems at least in part from the fact that during that (unspecified) time period Quest had entered into acquisition talks with HEICO (a JPE competitor) to sell similar parts to Delta Airlines and other airlines. *Id.* at ¶ 3.6.

Although it is not specifically alleged, it appears that JPE eventually sold all of its assets to HEICO. *See id.* at ¶ 3.7. JPE alleges that Quest failed to fully honor its agreement granting JPE the right of first refusal before selling its assets to HEICO. *Id.* According to JPE, Quest now claims that its sale and dissolution allows it to unilaterally terminate the Distribution

ORDER
PAGE - 2

Agreements.  Dkt. #1 at ¶ 3.10.  Subsequent to the sale, pending purchase orders which Quest was obligated to fill have gone unfilled.  *Id.* at ¶ 3.11.

JPE has further alleged that Mr. de Ruyter retained total control of Quest by serving as Quest's sole shareholder, sole director, and CEO.  *Id.* at ¶ 3.13.   When Quest sold all of its corporate assets to HEICO, it distributed the proceeds of the sale to its sole shareholder, Mr. de Ruyter.  *Id.* at ¶ 3.14.  JPE believes that in doing so, Quest rendered the corporation insolvent, despite both Quest's and Mr. de Ruyter's knowledge of the claims pending in this lawsuit.  *Id.* at ¶ 3.15.   As a result, JPE was left without any of the benefits of the contract with Quest, as well as monetary damages.  *Id.* at ¶¶ 3.16-3.17.

Plaintiff now brings claims against Defendants for: 1) breach of contract; 2) unjust enrichment; 3) violations of Washington's Consumer Protection Act ("CPA"); 4) piercing the corporate veil; and 5) fraudulent transfer.  Dkt. #1 at ¶¶ 4.1-4.25.  Defendants move to dismiss the Complaint in part.

### III.    DISCUSSION

**A. Standard of Review Under 12(b)(6)**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).   However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678.   This requirement is met when the plaintiff "pleads factual content that allows the court to draw the

ORDER
PAGE - 3

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Absent facial

plausibility, a plaintiff's claims must be dismissed.  *Twombly*, 550 U.S. at 570.

**B.  Piercing the Corporate Veil**

The Court first addresses Plaintiff's "claim" for piercing the corporate veil.  Defendants

argue that "piercing the corporate veil" is not a separate cause of action and therefore it must be

dismissed.  Dkt. #15 at 6.  Defendants also argue that if the Court recognizes it as a separate

claim, the claims fails because Plaintiff has failed to state the requisite facts to support such a

claim. *Id.* at 6-8.

As the Ninth Circuit Court of Appeals has made clear, a "request to pierce the corporate

veil is only a means of imposing liability for an underlying cause of action and is not a cause of

action in and of itself."  *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978,

985 (9th Cir. 1999).  Thus, JPE may not assert it as a separate claim.  However, JPE may seek

to impose liability for other claims by piercing the corporate veil.  Accordingly, the Court will

dismiss Plaintiff's claim, but allow it to amend its Complaint to make its allegations in the

context of its other underlying substantive claims.

**C.  Breach of Contract**

Defendants also seek to dismiss Plaintiff's breach of contract claim to the extent it is

asserted against Mr. and Mrs. De Ruyter individually.  Defendants argue that the claim is not

proper because neither of them are parties to the Distribution Agreements at issue.  Dkt. #15 at

3.  Plaintiff acknowledges that neither is a party to the contract, but argues that liability may be

imposed by piercing the corporate veil, and therefore the individual Defendants are properly

named in this claim.  Dkt. #16 at 10.

ORDER
PAGE - 4

The Court agrees that Plaintiff has failed to properly allege its breach of contract claim against the individually-named Defendants, and the Court will dismiss the breach of contract claim against them.  However, given the Court's ruling with respect to piercing the corporate veil, the Court will allow Plaintiff to amend its Complaint with respect to the breach of contract claim.

### D.  Violation of Washington's CPA

Defendants seek dismissal of Plaintiff's CPA claim on the basis that Plaintiff has failed to allege facts sufficient to support two elements of the claim – namely, that JPE failed to allege an "unfair or deceptive act" and that it cannot satisfy the public interest element.  Dkt. #15 at 4-6.  Plaintiff responds that it has pled more than sufficient facts to support the claim.  Dkt. #16 at 8-10.

To prevail on an action for damages under the CPA, the plaintiff must establish "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."  *Hangman Ridge Training Stables Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).  Under the Washington Supreme Court's *Hangman Ridge* test, a plaintiff may base a CPA claim on a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of the public interest.  *Klem v. Washington Mutual*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).  Plaintiff appears to base its CPA claim on the latter – an unfair or deceptive act or practice not regulated by statute but in violation of the public interest.  Dkt. #1 at ¶ ¶ 4.13-4.18.

ORDER
PAGE - 5

In order to fulfill the purpose of the CPA to "protect the public and foster fair and honest competition," RCW 19.86.920, even a private plaintiff must show that his lawsuit would serve the public interest by addressing acts or practices that are injurious to the public. *See Michael v. Mosquera-Lacy*, 165 Wash.2d 595, 605, 200 P.3d 695 (2009); *Hangman Ridge*, 105 Wash.2d at 788 (The Act "shall not be construed to prohibit acts or practices which . . . are not injurious to the public interest.". A claimant may establish that an act or practice affects the public interest by showing that it "(1) [v]iolates a statute that incorporates [RCW 19.86]; (2) [v]iolates a statute that contains a specific legislative declaration of public interest impact; or (3)(a) [i]njured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093.

Where a transaction can be characterized as "essentially a private dispute" rather than a consumer transaction, it may be difficult to show a public interest in the subject matter. *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash.App. 732, 744, 935 P.2d 628 (Wash. Ct. App. 1997). A dispute over the provision of professional services is an example of such a private dispute. *See Stephens v. Omni Ins. Co.*, 138 Wash.App. 151, 177, 159 P.3d 10 (Wash. Ct. App. 2007). In such an instance, the court looks to the following factors to determine the public's interest in the subject matter:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation to others? (4) Did plaintiff and defendant occupy unequal bargaining positions?

*Id.* (quoting *Hangman Ridge*, 105 Wash.2d at 790-91). None of these factors is dispositive nor must all of these factors be present. *Hangman Ridge*, 105 Wash.2d at 791.

ORDER
PAGE - 6

In this case, the Court agrees with Defendant that Plaintiff's Complaint is devoid of any facts sufficient to meet the public interest prong.  Plaintiff alleges in conclusory manner:

> 4.14 Quest and de Ruyter engaged in unfair and deceptive acts and practices.  Quest contracted with JPE to gain sufficient knowledge to sell its corporate assets and then breached the contract without conferring the benefit of the bargain owed to JPE.  Quest's failure to reveal its intent constitutes an act or practice capable of deception;
>
> 4.15 Quest's and de Ruyters' conduct occurred in trade or commerce; specifically the sale of assets and services to a Washington corporation;
>
> 4.16  Quest's and de Ruyters' conduct has a public interest impact as Quest and de Ruyter were acting in the course of their business and the acts are capable of repetition in commerce.

Dkt. #1 at ¶ ¶ 4.14-4.16.

The circumstances alleged fail to indicate that Defendants' conduct extended in any way beyond the two parties to the Distribution Agreements.  Further, to establish the public interest element, there must be a real and substantial potential for repetition, "'as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated.'"  *Mosquera-Lacy*, 165 Wn.2d at 604-05 (quoting *Eastlake Constr. Co., Inc. v. Hess*, 102 Wn.2d 30, 52, 686 P.2d 465 (1984)).  Thus, the Court cannot infer a public interest impact and must therefore dismiss Plaintiff's CPA claim on the pleadings.  *See Segal Co., Inc. v. Amazon.Com*, 280 F.Supp.2d 1229, 1234 (W.D. Wash. 2003) (granting motion to dismiss where plaintiff failed to allege specific facts showing a generalized pattern of solicitation or the potential for repetition of the allegedly deceptive conduct); *Michael*, 165 Wash.2d at 605 (dismissing CPA claim upon finding that "[t]here is no likelihood of any real or substantial potential that other people will be injured in the same way [plaintiff] was injured"); *Bly v. Field Asset Services*, 2014 U.S. Dist. LEXIS 74959, 2014 WL 2452755, *6 (W.D. Wash. 2014) (dismissing CPA claim for failure to plead sufficient facts to meet the public interest prong).

ORDER
PAGE - 7

**E.  Fraudulent Transfer**

Defendants ask the Court to dismiss Plaintiff's claim for fraudulent transfer on the basis that it fails to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  Dkt. #15 at 8-9.  Specifically, Defendants argue that Plaintiff fails to reach the level of specificity required.  Plaintiff argues that it has pled sufficient facts to meet the pleading standard.  Dkt. #16 at 7.

Under Washington's version of Uniform Fraudulent Transfer Act ("UFTA") (which is codified at Chapter 19.40 RCW and is the statute under which Plaintiff brings the instant claim), fraudulent transfers may be set aside if they are made with actual intent to hinder, delay, or defraud a creditor, or if they are made without receiving reasonably equivalent value.  RCW 19.40.041, .051, .071.  The term "transfer" is defined broadly: "'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."  RCW 19.40.011(12). In turn, an "asset" is "property of a debtor," and "property" is "anything that may be the subject of ownership."  RCW 19.40.011(2) and (10).  Thus, a transfer requires disposing of or parting with something that may be the subject of ownership.  RCW 19.40.011(2), (10) and (12).

The definition of "transfer" is "as broad as possible."  *In re Feiler*, 218 B.R. 957, 960 (Bkrtcy. N.D. Cal. 1998) (citing *In re Smiley*, 864 F.2d 562, 565 (7th Cir. 1989)).  The definition includes "every mode" of disposing of property, and is derived from a similar definition in § 101(48) of the Uniform Probate Code that also counts as a transfer "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset."  *See* RCW 19.40.011(12).  This includes many different kinds of transactions.

ORDER
PAGE - 8

For example, granting a security interest may be a transfer, *see In re Florida Bay Trading Co.*, 177 B.R. 374, 382 (Bkrtcy. M.D. Fla. 1994), or cancelling a contract for a deed, *In re Butler*, 552 N.W.2d 226, 234 (Minn. 1996), or creating an annuity to transfer the right to some future expectation of income, *see In re Covino*, 187 B.R. 773, 778-80 (Bkrtcy. S.D. Fla. 1995). Indeed, any transaction that greatly reduces the value of a debtor's estate may be a transfer. *Greenfield v. Arden Seven Penn Partners, L.P.*, 757 N.E.2d 699, 703-04 (Ind. Ct. App. 2001). This broad definition comports with the purpose of the act: to honor the principle that the debtor's property constitutes a fund from which creditors may be paid, and the debtor may not frustrate the creditor's right to obtain payment from that fund. *See, e.g., Benson v. Richardson*, 537 N.W.2d 748, 756 (Iowa 1995); *see also Freitag v. McGhie*, 133 Wn.2d 816, 947 P.2d 1186, 1189 (Wash. 1997). The fraudulent transfer doctrine is "a flexible principle that looks to substance, rather than form, and protects creditors from any transactions the debtor engages in that have the effect of impairing their rights . . . ." *Boyer v. Crown Stock Distrib.*, 587 F.3d 787, 793 (7th Cir. 2009).

Given this broad definition, the Court finds that JPE has alleged sufficiently specific facts to state its claim. JPE alleges:

> 4.22  Upon information and belief, Quest transferred the proceeds of the sale of its assets to Mr. de Ruyter with the actual intent to hinder, delay, or defraud its creditor JPE in violation of RCW 19.40.041;
>
> 4.23  Upon information and belief, JPE's claim arose before or after the transfer was made.
>
> 4.24  Upon information and belief, Quest's intent to hinder, delay, or defraud JPE is evidenced by the following factors:
>
> (a) The transfer was to an insider-Quest's sole shareholder;
>
> (b) Before the transfer was made, Quest had been threatened with suit;

ORDER
PAGE - 9

(c) The transfer was for substantially all of Quest's assets; and

(d) Quest was insolvent after the transfer was made.

Dkt. #1 at ¶ ¶ 4.22-4.24.   The Court further finds that these allegations meet both the *Iqbal/Twombly* pleading standards, and the heightened pleading standards under Rule 9(b).

First, it meets the *Iqbal/Twombly* pleading standard.  As noted above, under that standard, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663; *see also Telesaurus*, 623 F.3d at 1003.  JPE's Complaint plainly alleges a plausible claim for fraudulent transfer.  JPE's Complaint plausibly alleges all elements of a fraudulent transfer claim.

Likewise, JPE's Complaint meets the Rule 9(b) pleading standard.  Under Rule 9(b), a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud . . . , [although] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Rule 9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong. . . . Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).  JPE describes the alleged fraud with sufficient particularity to satisfy the requirements of Rule 9(b).  JPE describes who perpetrated the alleged fraud, what the fraud consisted of, when the fraud occurred, and how it was carried out.  There can be little question that the Complaint is sufficient to give Quest notice of the misconduct involved so that it can

ORDER
PAGE - 10

defend against the charge.  *See Vess*, 317 F.3d at 1106.  Accordingly, JPE's Complaint meets

the Rule 9(b) standard and the Court will not dismiss this claim.

### F.  Claims Against "Jane Doe" de Ruyter

Finally, Defendants ask this Court to dismiss all claims against Jane Doe Ruyter as

Plaintiff does not allege any specific claims against her, and Defendants believe that she is not

a necessary party to reach any marital community property.  Dkt. #15 at 9-10.  Plaintiff

believes that Mrs. Ruyter is necessary to reach marital community property.  Dkt. #16 at 10.

District Courts in the Ninth Circuit have dismissed the wives of named Defendants

when they are residents of states that are not community property states.  *See*, *e.g.*, *Conca v. RJ

Lee Group, Inc.*, 2015 U.S. Dist. LEXIS 54808 (E.D. Wash. Apr. 21, 2015).  District Courts in

this Circuit have also dismissed wives of named Defendants when community property statutes

governing the states in which they reside do not require joinder of a spouse to collect a debt

incurred by one or the other.  *See*, *e.g.*, *Gomez v. Faulker*, 2013 U.S. Dist. LEXIS 81864 (D.

Ariz. June 11, 2013).  Washington law provides that in circumstances where a spouse enters

into a contract affecting community property rights, the potential liability of the community is

determined by the law of the state of residence of the other spouse.  *G.W. Equip. Leasing, Inc.

v. Mount McKinley Fence Co., Inc.*, 97 Wn. App. 191, 197-98, 982 P.2d 114 (1999).  Ms. De

Ruyter is a resident of California.  Under California law, except as otherwise provided by

statute, the community estate is liable for a debt incurred by either spouse before or during

marriage, regardless of which spouse has the management and control of the property and

regardless of whether one or both spouses are parties to the debt or to a judgment for the debt.

Cal. Fam Code, § 910, subd. (a).  Thus, it does not appear that Ms. de Ruyter is necessary as a

ORDER
PAGE - 11

named defendant to bind the marital property.  With that understanding, the Court will dismiss Ms. de Ruyter from this action.

**G.  Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)).  The Court grants Plaintiff's request for leave to amend for the reasons discussed above, and because it does not find amendment to be futile with respect to Plaintiff's claims for breach of contract and piercing the corporate veil. Accordingly, if Plaintiff wishes to amend its Complaint with respect to those claims, it is permitted to do so within fourteen (14) days of the date of this Order.

However, the Court finds that any amendment to Plaintiff's CPA claim would be futile. For the reasons discussed above, it does not appear that any set of alleged facts would support the public interest element of that claim under the circumstances present in this case. Therefore, that claim is dismissed with prejudice and may not be amended.

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Defendants' Motion to Dismiss (Dkt. #15) is GRANTED IN PART AND DENIED IN PART as set forth above.  Specifically:

ORDER
PAGE - 12

a.  Plaintiff's claims for breach of contract and piercing the corporate veil are

DISMISSED WITH LEAVE TO AMEND.

b.  Plaintiff's CPA claim is DISMISSED in its entirety with prejudice.

c.  Plaintiff's claim for fraudulent transfer is NOT DISMISSED.

2)  If Plaintiff wishes to amend its Complaint with respect to its claims for breach of

contract and piercing the corporate veil, they are permitted to do so within <u>fourteen

(14) days of the date of this Order</u>.

3)  Jane Doe de Ruyter is DISMISSED as a party to this action with the understanding

that it is not necessary to name her as a defendant to bind the marital property.

DATED this 27 day of July 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 13